[Cite as *Morgan v. Morgan*, 2018-Ohio-4178.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| DEBORAH S. MORGAN, | : | CASE NO. CA2017-09-131 |
| Plaintiff-Appellee, | : | O P I N I O N<br>10/15/2018 |
| | : | |
| - vs - | : | |
| | : | |
| MICHAEL C. MORGAN, | : | |
| Defendant-Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2016-01-0056

Mark W. Raines, 246 High Street, Hamilton, OH 45011, for plaintiff-appellee

Traci Combs-Valerio, 1248 Nilles Road, Suite 7, Fairfield, OH 45014, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Michael C. Morgan ("Father"), appeals from the decision of the Butler County Court of Common Pleas, Domestic Relations Division, designating plaintiff-appellee, Deborah S. Morgan ("Mother"), the legal custodian and residential parent of their four minor children, Ke.M., Ka.M., Ja.M., and Jo.M.

{¶ 2} Father and Mother married on March 16, 1996. Ke.M. was born as issue of

the marriage on October 25, 2002. Ka.M., Ja.M., and Jo.M. were adopted by the parties, and were born on July 21, 2004, September 14, 2007, and May 24, 2009, respectively.

{¶ 3} This case stems from an incident that occurred on October 17, 2015. Mother returned from shopping with the couple's three daughters and discovered Father and their son, Jo.M., showering together. Jo.M. was six years old at the time. Two days later, when Father arrived home from work, he found Mother and Mother's sister and brother-in-law, Sondra and Tom Head (hereinafter referred to collectively as the "Heads"), waiting for him. Mother accused Father of sexually abusing Jo.M. Father explained that he regularly showers with Jo.M. because Jo.M. enjoys showering together. Father denied any sexual abuse. As an aftermath of being confronted with these accusations, Father moved out of the marital residence.

{¶ 4} Shortly after the shower incident, Mother petitioned for an ex parte protection order. Mother's petition named Jo.M. as the protected party and sought to suspend Father's visitation with the children. The trial court granted the protection order, allocated parental rights of the children to Mother, and temporarily suspended Father's visitation rights.

{¶ 5} Later that week, Mother took the children to the Mayerson Center for an evaluation. All four children denied any sexual abuse by Father. The Mayerson Center report indicated that Jo.M. initially made statements that were concerning for inappropriate contact, but then recanted those claims. Law enforcement investigated the allegations and elected not to file any charges. Likewise, the county children services agency chose not to open an investigation into the matter. On January 20, 2016, Mother filed a complaint for divorce. Shortly after the divorce filing, the trial court held a hearing on the protection order and a magistrate dismissed the ex parte order due to lack of evidence. Father then filed his answer to the complaint and a motion to modify parenting time.

{¶ 6} Following a hearing, the trial court granted Father supervised parenting time

through a program with the domestic relations court. The trial court also granted daily telephone contact with the children. Further, the trial court granted additional supervised contact between Father and the children, as supervised by Mother, Mother's sister, nephew, or other family members named by Mother at the hearing. Father's additional supervised parenting time was subject to additional court orders that:

> [Mother] shall cooperate with parenting time. She shall not permit the older children to influence the younger children. All of the children shall participate, and [Mother] shall encourage the children regarding the parenting time.
>
> NEITHER PARTY SHALL SPEAK ILL OF THE OTHER PARENT, THEIR FAMILY OR LOVED ONES, OR DISCUSS ANY DIVORCE ISSUES IN FRONT OF THE CHILDREN. THEY SHALL NOT PERMIT THE CHILDREN TO BE EXPOSED TO ANY SUCH DISCUSSIONS BY THIRD PARTIES.

The trial court issued a later order clarifying its previous orders with respect to visitation. The trial court specified the time and days of the week for such visitation and stated that Father may choose the location. The trial court reiterated its order regarding the parents discussing divorce or parenting issues with the children. On October 18, 2016, the trial court granted Father's motion for counseling and issued an order specifying the children were to have no contact with the Heads due to concerns regarding the couple's influence over the children.

{¶ 7} Both Mother and Father testified regarding concerns with the scheduled visitation throughout the case. Mother testified she had concerns with Father's location choices for visitation, travel requirements, and what she perceived as Father's confrontational behaviors towards the children. Father testified Mother failed to adhere to the allotted time for the visits and often acted as a roadblock with respect to his interactions with the children. Both parents testified regarding perceived animosity from the children towards Father during visitation.

{¶ 8} With respect to education, Mother testified she homeschools the children and that the children have done well scholastically. The children have also participated in a few extracurricular activities, such as gymnastics and basketball. Additionally, the children have participated in bible study at church and at home with Mother's family. Father characterized the home bible study as a cult. However, other participants in the bible study described it as an opportunity to pray and discuss scripture.

{¶ 9} The trial court heard testimony regarding an episode experienced by Mother in October 2011. Mother testified that she believed she was possessed by demons. Mother believed the demons verbally communicated to her through electronic devices and posed a threat to the safety of the children. Therefore, she removed several electronic devices from her house and placed them in the front yard. Mother believed she had sexual relations with a demon and that the voices she heard informed her that she was the bride of Christ and that she was going to be the queen of Heaven. Mother testified she did not believe the voices with respect to these statements. One day, fearing for the safety of her children, Mother drove the children to church and barricaded herself in the bathroom away from any electronic devices. Following this incident, Mother was taken to the psychiatric ward at Fort Hamilton Hospital. Father checked Mother out of the hospital after a few days. However, Mother still believed she was interacting with demons; therefore, several family members "prayed over" her to cast away the demons. Mother testified she has had no similar episodes since 2011.

{¶ 10} Dr. Barbara Bergman conducted individual psychological evaluations on both Mother and Father in 2016. Dr. Bergman concluded that the parents "are psychiatrically stable individuals, who do not manifest major mental disorders." Dr. Bergman recommended designating Mother legal custodian and residential parent. The guardian ad litem ("GAL") for the children filed a written report and likewise recommended designating

Mother legal custodian and residential parent.

{¶ 11} Following the final divorce hearings, the trial court issued its decision and entry on May 11, 2017 designating Mother legal custodian and residential parent. The trial court entered a decree of divorce on August 3, 2017.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ABUSED ITS DISCRETION IN DESIGNATING APPELLEE AS THE SOLE RESIDENTIAL PARENT AND LEGAL CUSTODIAN, AS THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} Father contends that the trial court abused its discretion in designating Mother the legal custodian and residential parent, as its decision was against the manifest weight of the evidence.

{¶ 15} Before considering the specifics of Father's assignment of error, we acknowledge "the power of the trial court to exercise discretion is peculiarly important in proceedings involving the custody and welfare of children." *Kenney v. Kenney*, 12th Dist. Warren No. CA2003-07-078, 2004-Ohio-3912, ¶ 6. "The discretion a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination has on the lives of the parties concerned." *Id.*; *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). Therefore, an appellate court's standard of review in custody matters is abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). An abuse of discretion is more than an error of law or judgment; it implies the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} A manifest weight of the evidence challenge concerns "'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather

than the other.'" (Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In a manifest weight challenge a "reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063 and CA2011-06-064, 2012-Ohio-3130, ¶ 67. "[E]very reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment * * *." *Id.*

{¶ 17} R.C. 3109.04(B)(1) states that a trial court must consider a child's best interests when allocating parental rights and responsibilities. *See In re A.B.*, 12th Dist. Butler No. CA2009-10-257, 2010-Ohio-2823, ¶ 25. In considering a child's best interests, the trial court must consider the factors set forth in R.C. 3109.04(F)(1), which include: the wishes of the parents; the child's wishes expressed to the court; the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interest; the child's adjustment to home, school, and community; the mental and physical health of all persons involved in the situation; the parent more likely to honor and facilitate visitation; whether one parent has denied the other parenting time; whether either parent has failed to make all child support payments; and whether either parent has established or is planning to establish a residence outside of Ohio.

{¶ 18} Father argues the evidence presented demonstrates the trial court erred in designating Mother the legal custodian and residential parent of the children. Father asserts the trial court made this designation despite finding multiple best interest factors weighed

- 6 -

in his favor. Therefore, he argues the trial court's designation constitutes an abuse of discretion, as the decision was against the manifest weight of the evidence.

{¶ 19} In designating Mother the legal custodian and residential parent of the children, the trial court considered each of the relevant best interest factors in light of the evidence presented at trial. The trial court found that both parents wished to be designated the legal custodian and residential parent. The children expressed their wishes through in camera interviews. The trial court found the three older children capable of expressing their wishes and concerns, but due to his young age, Jo.M. was unable to do so. The trial court expressed concerns with Jo.M.'s speech and overall development. The trial court found the children shared common interests in participating in extracurricular activities and interaction with other children.

{¶ 20} The trial court found the children are extremely bonded to Mother and bonded to one another. The trial court further found that the children were likely bonded to Father, but that their relationship with him had deteriorated over the past year to the point that there was some alienation. The trial court also found the Heads exerted undue influence over the children, particularly with respect to the allegations of sexual abuse. Therefore, the trial court temporarily issued a no contact order between the children and the Heads. The trial court found the contentious nature of the divorce negatively affected the children. Likewise, Mother's communication with the children negatively affected their relationship with Father.

{¶ 21} The trial court agreed with Dr. Bergman that the allegations against Father that began this process were the result of questions raised by Mother and her family regarding Jo.M. However, the trial court weighed the allegations against the fact that they were found to be without merit by law enforcement, the county children services agency, the Mayerson Center, and the trial court itself when it dismissed the ex parte protection order.

- 7 -

{¶ 22} The trial court expressed concern throughout the case regarding the children's social and academic isolation. The trial court found the children are homeschooled and have had limited extracurricular involvement. The youth sports and church programs the children have participated in have been mostly led by Mother's brother-in-law.

{¶ 23} With respect to mental and physical health, the trial court reviewed the testimony regarding Mother's psychiatric hospitalization and Dr. Bergman's report. Dr. Bergman found neither parent suffered from serious mental illness. However, the trial court agreed with Dr. Bergman's assessment that highly dysfunctional dynamics affected the relationships between the parents and children. The trial court considered the evidence regarding Mother's mental breakdown in 2011 and found that she minimized the extent of it and her hospitalization. Further, the trial court found Mother's approach in how she pursued exploring the validity of the sexual abuse allegations may have negatively affected the children.

{¶ 24} The trial court likewise expressed concerns with Mother's willingness to honor Father's parenting time. The trial court incorporated a prior finding, restating that

> [t]he Court has concerns regarding [Mother's] overall credibility. She was consistently evasive regarding parenting issues, and exposure of the children to divorce issues. She appears completely unaware of the inappropriateness of involving her children in divorce negotiations and discussions regarding the divorce.

The trial court agreed with Dr. Bergman's assessment that Mother actively alienated the children from Father, which served as the basis for a prior contempt finding.

{¶ 25} Based on these findings, the trial court found that it was in the children's best interest to designate Mother the legal custodian and residential parent. Further, the trial court issued additional directives. With respect to schooling, the trial court ordered that the

children must be enrolled in a state-accredited homeschool program, attend public school for some of their classes, and must participate in at least one extracurricular program per semester. The trial court further ordered that the children have extensive parenting time with Father, facilitated by counseling.

{¶ 26} Upon a thorough review of the record, we find the trial court did not abuse its discretion in designating Mother the legal custodian and residential parent of the children, as its decision was supported by the manifest weight of the evidence. Father correctly asserts the trial court found multiple factors weighed in favor of designating him as legal custodian and residential parent. However, while the trial court did find some factors weighed in favor of Father, the trial court based its decision on a *weighing of all the relevant best interest factors*. *See In re M.A.*, 12th Dist. Butler No. CA2011-02-030, 2012-Ohio-545, ¶ 16 (stating a trial court should consider the totality of the circumstances affecting the best interests of children).

{¶ 27} The trial court made its decision by according certain factors more weight than others. Notably, the trial court indicated its concern with the children's lack of exposure to the world beyond their immediate family. The trial court also noted its concern that the children have never attended public school, have generally participated in limited activities outside of the home, and are socially isolated. The trial court also noted that Mother has always been their primary caregiver even before the commencement of these divorce proceedings. The trial court weighed these considerations against the evidence presented that the relationship between Father and the children has deteriorated and will need time to repair. The trial court also considered that Father did not present any evidence regarding where he will permanently reside and the public school the children would attend. Due to these uncertainties and concerns that the children require a period of transition from their isolation within the family and to develop a normal relationship with Father, the trial court

resolved that designating Father legal custodian and residential parent would not serve the children's best interest. Despite some reservations, the trial court "guardedly designate[d Mother] legal custodian and residential parent."

{¶ 28} The record contains competent, credible evidence supporting the trial court's decision in this difficult case. The children were 13, 11, 8, and 7 at the time of the divorce hearings. As discussed, Mother homeschooled them throughout the entirety of their educational life and they have enjoyed limited extracurricular involvement. The record indicates Mother was the primary caregiver during marriage, which continued throughout the pendency of the divorce proceedings. Further, once the allegations of sexual abuse by Father arose, his relationship with the children continuously deteriorated. Both Dr. Bergman and the GAL indicated the relationships between Father and the children should be progressively repaired. They recommended increased visitation to continue this process and the trial court followed this recommendation by ordering significant visitation time. Likewise, both Dr. Bergman and the GAL recommended designating Mother legal custodian and residential parent. Furthermore, the trial court ordered multiple social and school directives to alleviate these concerns and to help ensure its decision serves the best interest of the children.

{¶ 29} Therefore, the trial court did not abuse its discretion, as its decision was supported by the manifest weight of the evidence.

{¶ 30} Accordingly, Father's first assignment of error is overruled.

{¶ 31} Assignment of Error No. 2:

{¶ 32} THE TRIAL COURT ERRED WHEN IT DID NOT INCORPORATE THE NO CONTACT ORDER BETWEEN THE MINOR CHILDREN AND MATERNAL AUNT AND UNCLE IN THE FINAL DECREE OF DIVORCE.

{¶ 33} Father asserts the trial court abused its discretion by not incorporating into the

final decree of divorce its earlier decision temporarily ordering no contact between the children and the Heads.

{¶ 34} As stated above, on October 18, 2016, the trial court found at the time that contact between the children and the Heads may not be in the best interest of the children. Therefore, the trial court issued a temporary no contact order until it heard all of the evidence. In its decision and entry on May 11, 2017, the trial court "adopt[ed] its findings from the [October 18, 2016] and [February 28, 2017] entries regarding the best interest factors in general, and the children's relationships in particular." The May 11, 2017 decision and entry and the final decree of divorce stated:

> NEITHER PARTY SHALL SPEAK ILL OF THE OTHER PARENT, THEIR FAMILY OR LOVED ONES, OR DISCUSS ANY DIVORCE ISSUES IN FRONT OF THE CHILDREN. THEY SHALL NOT PERMIT THE CHILDREN TO BE EXPOSED TO ANY SUCH DISCUSSION BY THIRD PARTIES. The parties are responsible for exposure to stressful or negative influences in the children's lives.

Neither the trial court's May 11, 2017 decision and entry nor the final decree of divorce included any specific restrictions on the children's contact with the Heads. Nonetheless, the above provision provides an avenue of redress for Father should he discover that Mother is permitting the Heads to undermine his relationship with the children.

{¶ 35} We find the trial court did not abuse its discretion by not including a specific contact restriction between the children and the Heads. Throughout the pendency of this case, the trial court repeatedly indicated its concern with the influence of the parents and their respective families on the children regarding the parents and the divorce proceedings. The trial court specifically addressed this concern by including the restrictive language in its May 11, 2017 decision and entry and the final decree of divorce.

{¶ 36} Further, the trial court's earlier entry indicated the temporary nature of the no contact order. After the final hearings concluded, it could have included language regarding

- 11 -

the no contact order and chose not to do so.  This decision was supported by competent, credible evidence.  While the GAL did not share a specific recommendation regarding the no contact order, he stated the children are very close with the Heads.  The GAL further stated that the children share a good relationship with the Heads and miss them very much. Therefore, the trial court did not abuse its discretion by not including a specific contact restriction between the children and the Heads.

{¶ 37} Accordingly, Father's second assignment of error is overruled.

{¶ 38} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.